1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   MARTINA A. MYERS,                          NO.  C12-1396-RAJ-JPD

9                           Plaintiff,

10          v.                                 REPORT AND
                                               RECOMMENDATION
11   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,[1]
12
                            Defendant.
13

14          Plaintiff Martina A. Myers appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied her applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be REVERSED and REMANDED for further administrative

20   proceedings.

21

22          [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
     Security.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
23   Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this
     suit.  **The Clerk of Court is directed to update the docket accordingly, and the parties are**
24   **ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

1

I.      FACTS AND PROCEDURAL HISTORY

2          At the time of the administrative hearing, plaintiff was a forty-six year old woman with

3    a ninth grade education.  Administrative Record ("AR") at 67.  Her past work experience

4    includes employment as a liquor store sales clerk, restaurant hostess and waitress, and bingo

5    hall employee.  AR at 68, 72.  Plaintiff testified that she was last gainfully employed as a sales

6    clerk at a liquor store between 2001 and 2003.  AR at 68, 73.

7          On December 12, 2008, plaintiff protectively filed a claim for SSI payments.  On

8    January 13, 2009, she filed an application for DIB, alleging an onset date of November 23,

9    2005.  AR at 183, 186.  Plaintiff asserts that she is disabled due to chronic pain syndrome,

10   degenerative disk disease status-post laminectomy, obesity, bipolar disorder, and post-

11   traumatic stress disorder.  AR at 32, 132.

12         The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 123,

13   126, 132, 134.  Plaintiff requested a hearing, AR at 136, which took place on October 12, 2010.

14   AR at 64-66.  On November 5, 2010, the ALJ issued a decision finding plaintiff not disabled

15   and denied benefits based on his finding that plaintiff could perform a specific job existing in

16   significant numbers in the national economy.  AR at 57-58.  On January 13, 2012, the Appeals

17   Council denied plaintiff's request for review of the ALJ's November 5, 2010 decision, making

18   the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C.

19   § 405(g).  AR at 11-13.  On August 17, 2012, plaintiff timely filed the present action

20   challenging the Commissioner's decision.  Dkt. 1.

21

II.     JURISDICTION

22         Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

23   405(g) and 1383(c)(3).

24

1

### III.    STANDARD OF REVIEW

2      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

3  social security benefits when the ALJ's findings are based on legal error or not supported by

4  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

5  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

6  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

7  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

8  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

9  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

10  53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

11  whole, it may neither reweigh the evidence nor substitute its judgment for that of the

12  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

13  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

14  must be upheld.  *Id.*

15      The Court may direct an award of benefits where "the record has been fully developed

16  and further administrative proceedings would serve no useful purpose."  *McCartey v.*

17  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

18  (9th Cir. 1996)).  The Court may find that this occurs when:

19  
20  
21  

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

22  *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

23  erroneously rejected evidence may be credited when all three elements are met).

24  

REPORT AND RECOMMENDATION - 3

1

## IV.   EVALUATING DISABILITY

2          As the claimant, Ms. Myers bears the burden of proving that she is disabled within the

3 meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

4 Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

5 any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

6 expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

7 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

8 are of such severity that she is unable to do her previous work, and cannot, considering her age,

9 education, and work experience, engage in any other substantial gainful activity existing in the

10 national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

11 99 (9th Cir. 1999).

12          The Commissioner has established a five step sequential evaluation process for

13 determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

14 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

15 step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

16 any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

17 one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

18 §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the

19 Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

20 or more medically severe impairments, or combination of impairments, that limit her physical

21 or mental ability to do basic work activities.  If the claimant does not have such impairments,

22 _____

23          [2] Substantial gainful activity is work activity that is both substantial, i.e., involves
significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §
24 404.1572.

REPORT AND RECOMMENDATION - 4

she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On November 5, 2010, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.    The claimant has not engaged in substantial gainful activity since November 23, 2005, the alleged onset date.

3.    The claimant has the following severe impairments: degenerative disc disease status-post laminectomy; obesity; mood disorder; and substance use disorder.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), in that she is able to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday, and to stand and/or walk for 6 hours in an 8-hour workday, with no limitations with regard to pushing or pulling the above amounts.  She has occasional postural limitations.  She is able to perform simple and some hands-on tasks reliably.  She would work best in a clean and sober environment in a job that required only limited interactions with the public and limited interactions with co-workers.  She would work best in a workplace that has stable hours, clear job expectations, and a steady work pace.  [footnotes omitted]

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on XXXXX, 1963 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8.  The claimant has a limited education and is able to communicate in English.

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 23, 2005, through the date of this decision.

AR at 32-57.

## VI.  ISSUES ON APPEAL

The principal issues on appeal are:

1.  Did the ALJ err in evaluating plaintiff's severe impairments at step two, by failing to find that chronic pain syndrome was a medically determinable impairment?

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

2.     Did the ALJ err in evaluating plaintiff's credibility?

3.     Did the ALJ err in relying upon the medical-vocational guidelines instead of obtaining vocational-expert testimony at step five?

Dkt. 11 at 1; Dkt. 14 at 2.

## VII.     DISCUSSION

A.     The ALJ Erred by Finding that Chronic Pain Syndrome Was Not a "Medically Determinable Impairment" at Step Two, but this Error was Harmless

*1.     Legal Standard*

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

2.      *The ALJ Rejected Chronic Pain Syndrome as a "Medically Determinable Impairment"*

The record reflects that as early as August 2009, plaintiff was diagnosed with chronic pain syndrome by treating physician Dr. Dillinger.  AR at 700-01.  Plaintiff saw Dr. Dillinger for follow up appointments for her chronic pain syndrome every few months.  AR at 514-15, 516-17, 692-93, 696-97, 698-99.  However, the ALJ rejected chronic pain syndrome as a "medically determinable impairment" at step two of the sequential evaluation process.

Specifically, in the ALJ's discussion of plaintiff's severe impairments, the ALJ acknowledged that "the evidence establishes claimant has a long history of back pain attributable to degenerative disc disease.  In October of 2003, she underwent lumbar fusion with hardware." AR at 32.  The ALJ also noted that plaintiff's back "has continued to affect the claimant's functioning to a significant degree throughout the period at issue and is therefore a 'severe' impairment."  AR at 32.  With respect to Dr. Dillinger's chronic pain syndrome diagnosis, the ALJ asserted that:

> The record contains references to "chronic pain syndrome."  I find that the addition of references to "chronic pain syndrome" do not impose any further functional limitations in excess of those attributable to claimant's other diagnosed impairments. *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348-49 (9th Cir. 2010).[4]  In many cases a notation of chronic pain syndrome or disorder is merely the designation provided by the practitioners in question <u>for</u> the pain alleged. Chronic pain syndrome means only that there are complaints of pain.  *Caenen v. Secretary of Health and Human Services*, 722 F. Supp. 629, 631 (D. Nev. 1989). This "diagnosis" does not equate to disability under the Social Security Act.  *See, generally, Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986); *Compare*, *Beecher v. Heckler*, 756 F.2d 693, 695-96 (9th Cir. 1985).
>
> Because Chronic Pain Syndrome is neither a mental disease (compare, Somatization Disorder, Diagnostic and Statistical manual of Mental Disorders, 2300.81, Pain Disorder 307.80 (4th ed. 1994, American Psychiatric Ass'n), nor a

---

    4  In *Mondragon*, the Ninth Circuit held that the ALJ did not err by failing to find the plaintiff's chronic pain disorder to be a severe impairment at step two because "chronic pain disorder did not impose functional limitations in excess of Mondragon's physical impairments," and therefore "[a]ny alleged error at step two was harmless because step two was decided in [claimant's] favor with regard to other ailments."

physical disease, it is not a medically determinable impairment for purposes of analyzing credibility; that is, it cannot provide a predicate for the regulatory requirement of an impairment that could reasonably be expected to cause the pain alleged. Reference must be made to whatever may or may not be the source of the alleged pain.

AR at 33.

### 3. The ALJ's Error at Step 2 was Harmless, In Light of the RFC

Plaintiff contends that the ALJ erred by "apparently ruling that, as a matter of law, chronic pain syndrome is not a medically determinable impairment." Dkt. 11 at 14 (citing AR at 32-33).[5] Plaintiff asserts that the Social Security Administration "accepts that a chronic pain syndrome may be, not must be, a medically determinable impairment. Indeed, the Agency issued SSR 03-02p for a particular kind of 'chronic pain syndrome,' namely complex regional pain syndrome." Id. (citing SSR 03-02p) Plaintiff therefore argues that the ALJ erred by relying upon an unproffered U.S. District Court from the District of Nevada, and "the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) [(DSM-IV-TR)] for the proposition that chronic pain syndrome is not a mental impairment . . . the ALJ also unreasonably argued or implied that because [the APA's] diagnostic category of 'Pain Disorder' [in the DSM-IV-TR] does not include the three words 'chronic pain syndrome,' chronic pain syndrome is not a medically determinable mental impairment." Id. (citing AR at 33). Plaintiff asserts that the DSM-IV-TR does, in fact, include "acute and "chronic" kinds of pain disorders, thereby encompassing chronic pain syndrome. Id. at 16 (citing DSM-IV-TR at 503). Because the ALJ in this case was "apparently unaware of the specific diagnostic criteria, including clinical findings, for chronic pain syndrome,"

---

[5] Plaintiff points out that in Dr. Dillinger's treatment notes, he "did not use a DSM-IV-TR diagnostic code for chronic Pain Disorder, but rather the International Classification of Diseases ("ICD") code for chronic pain syndrome." Dkt. 11 at 16-17 (citing http://www.cdc.gov/nchs/icd/icd9cm.htm).

REPORT AND RECOMMENDATION - 9

1  plaintiff contends that "substantial evidence does not support the ALJ's finding that Myers did

2  not have chronic pain syndrome as a medically determinable impairment and thus substantial

3  evidence does not support the ALJ's related [RFC] assessment and adverse credibility

4  finding." *Id.*

5          The Commissioner does not directly respond to plaintiff's step two arguments.  Instead,

6  the Commissioner asserts that because the ALJ found that plaintiff suffered from several

7  severe impairments at step two, including degenerative disk disease status-post laminectomy,

8  and "[p]laintiff identifies no additional functional limitations caused by Plaintiff's alleged

9  chronic pain syndrome that the ALJ failed to include in the RFC . . . Plaintiff, therefore, shows

10  no harm arising from any error in the ALJ's determination that chronic pain syndrome was not

11  severe at step two."  Dkt. 14 at 4.

12          The ALJ's finding with respect to chronic pain syndrome/disorder appears to lack both

13  medical and legal support.  The DSM-IV-TR recognizes three subtypes of pain disorder: pain

14  disorder associated with psychological factors (307.80); pain disorder associated with both

15  psychological factors and a general medical condition (307.89); and pain disorder associated

16  with a general medical condition – only the latter of which is not considered a mental disorder

17  and is used to facilitate differential diagnosis.  DSM-IV-TR 499 (4th ed. 2000).  Thus, contrary

18  to the ALJ's assertion that the DSM-IV-TR establishes that "Chronic Pain Syndrome is neither

19  a mental disease . . . nor a physical disease," AR at 33, the DSM-IV-TR shows that two

20  subtypes of pain disorder are recognized mental disorders.

21          Moreover, Ninth Circuit case law recognizes the existence of pain-based impairments

22  having "both a physical and psychological component."  *Lester v. Chater*, 81 F.3d 821, 829-30

23  (9th Cir. 1996) (discussing a claimant's "acute pain", deemed "chronic pain syndrome" by a

24  medical adviser) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991) (en banc)

REPORT AND RECOMMENDATION - 10

1   (recognizing that pain is "a completely subjective phenomenon" and that the Commissioner

2   must consider all available evidence in assessing complaints of pain)).  *See also Young v.*

3   *Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (stating physician's report was "not conclusive on

4   the issue of the extent to which appellant suffered from chronic pain syndrome on a

5   psychophysiologic basis[,]" and that, while it suggested the diagnosis, "it is not at all clear

6   from the report that appellant suffers from disabling levels of lower back pain.")  As the court

7   stated in *Lester*, "[p]ain merges into and becomes a part of the mental and psychological

8   responses that produce the functional impairments. The components are not neatly separable."

9   *Id*.  In that case, the Ninth Circuit found that because the consequences of the claimant's

10  physical and mental impairments were "so inextricably linked," the Commissioner was

11  required to "consider whether the[] impairments taken together result[ed] in limitations equal

12  in severity to those specified by the listings."  *Id*.  Thus, the Court finds no support for the

13  ALJ's conclusion that chronic pain syndrome is not a medically determinable impairment.

14         Although the ALJ made an erroneous step two finding with respect to plaintiff's

15  chronic pain syndrome diagnosis, however, the Court finds this error "inconsequential to the

16  ultimate nondisability determination" in this particular case, and therefore, harmless.  *Molina v.*

17  *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  The failure to list an impairment as severe at step

18  two can be deemed harmless where associated limitations are considered at step four.  *Lewis v.*

19  *Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Here, the ALJ asserted that "references to 'chronic

20  pain syndrome' [in the record] do not impose any further functional limitations in excess of

21  those attributable to claimant's other diagnosed impairments," AR at 32-33, and the ALJ also

22  acknowledged throughout his written decision that plaintiff experiences ongoing pain as a

23  result of her back impairment (although he discounted her testimony as to the severity and

24  limiting effects of her pain based upon drug-seeking behavior).  The ALJ's RFC assessment

REPORT AND RECOMMENDATION - 11

1    also appears to include some pain-related limitations, as the ALJ limited plaintiff to a range of

2    light work with occasional postural limitations.  AR at 36 (finding plaintiff capable of light

3    work, with "occasional" postural limitations that would not "significantly erode the universe of

4    light work.").[6]

5             Significantly, plaintiff has directed the Court's attention only to evidence that plaintiff

6    has received a diagnosis of chronic pain syndrome, and has frequently and consistently

7    complained of ongoing back pain.  A finding that an impairment is severe requires more than a

8    diagnosis and evidence of subjective complaints of pain, however.  As argued by the

9    Commissioner, plaintiff has not demonstrated any additional significant limitations as a result

10   of her chronic pain syndrome that are not already accounted for by the ALJ's RFC assessment.

11   Accordingly, the Court concludes that the ALJ's error in evaluating chronic pain syndrome at

12   step two was harmless.

13             B.        The ALJ Did Not Err in Evaluating Plaintiff's Credibility

14             Plaintiff contends that the ALJ erred in assessing plaintiff's credibility because

15   "the ALJ found Myers not credible because she took too much pain medication . . . when

16   taking too much pain medication is consistent with chronic pain syndrome."  Dkt. 11 at 17

17   (citing AR at 47-48).  Plaintiff asserts that "[b]ecause the ALJ found that Myers was not

18   credible in part because she took too much medication when taking too much medication is

19   consistent with chronic pain syndrome, the ALJ's adverse credibility finding was

20

21             [6] This case is therefore distinguishable from *Nason v. Astrue*, C10-1492-JLR-MAT
     (W.D. Wash. April 2010), a prior case in which this ALJ made the same erroneous findings
22   with respect to chronic pain syndrome at step two.  In *Nason*, the ALJ's erroneous rejection of
     chronic pain syndrome as a medically determinable impairment at step two was not harmless,
23   because "there [was] nothing in the ALJ's RFC assessment indicating consideration of pain-
     related limitations at step four . . . In fact, given the ALJ's finding at step two, his assessment
24   of the medical opinions related to pain, and the assessment of plaintiff's credibility, it would
     appear that he did not consider pain as a factor relevant to the step four finding."

REPORT AND RECOMMENDATION - 12

1  unreasonable.  An ALJ cannot rationally find a claimant not credible for having symptoms

2  associated with a medically determinable impairment." *Id.*

3       The Commissioner responds that "the ALJ found plaintiff not credible because she lied

4  to or withheld important information from various doctors and sought additional narcotics

5  prescriptions in direct contravention of the orders of several doctors, not because she took too

6  much pain medication."  Dkt. 14 at 5.  The Commissioner asserts that "because the ALJ's

7  reason for rejecting Plaintiff's testimony was clear and convincing, and because Plaintiff does

8  not challenge any other reasons the ALJ gave for rejecting Plaintiff's testimony, the ALJ's

9  credibility finding should be upheld." *Id.*

10      As noted above, credibility determinations are within the province of the ALJ's

11 responsibilities, and will not be disturbed, unless they are not supported by substantial

12 evidence.  A determination of whether to accept a claimant's subjective symptom testimony

13 requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR

14 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment

15 that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R.

16 §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant

17 produces medical evidence of an underlying impairment, the ALJ may not discredit the

18 claimant's testimony as to the severity of symptoms solely because they are unsupported by

19 objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc);

20 *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing

21 that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for

22 rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

23      When evaluating a claimant's credibility, the ALJ must specifically identify what

24 testimony is not credible and what evidence undermines the claimant's complaints; general

REPORT AND RECOMMENDATION - 13

findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may

consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

inconsistencies in testimony or between testimony and conduct, daily activities, work record,

and testimony from physicians and third parties concerning the nature, severity, and effect of

the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.*

*Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ has provided numerous clear and convincing reasons for finding plaintiff less

than credible. Although plaintiff is correct that the ALJ erred in evaluating plaintiff's

diagnosis of chronic pain syndrome, plaintiff mischaracterizes the ALJ's findings with respect

to plaintiff's use of pain medications. Specifically, the ALJ did not conclude that plaintiff

"was not credible in part because she took too much medication[.]" Dkt. 11 at 17. Nor did the

ALJ consider "[the] claimant . . . dishonest because the claimant has chronic pain syndrome."

Dkt. 15 at 10. Contrary to plaintiff's arguments, the ALJ properly relied on "the

inconsistencies in [plaintiff's] reports to various treating and examining physicians regarding

her substance abuse history and her documented abuse of narcotics and pain contract

violations." AR at 47. Specifically, the ALJ cited to numerous examples in the record

"show[ing] the claimant rarely made the same report twice regarding her drug and alcohol use

history. Her reports were contradicted both by her own reports and by urinalysis . . .

shed[ding] doubt on the overall accuracy and reliability of the claimant's reports and

allegations." AR at 49.

Based on this evidence, the ALJ could reasonably conclude that plaintiff's drug-seeking

behavior was evidence of "a motive on the claimant's part for overstating her pain complaints

and underreporting her functional abilities." AR at 48. Thus, the Court finds that plaintiff's

inconsistent reports regarding her substance abuse history, her history of abusing drugs and

narcotic medications, and her pain contract violations are clear and convincing reasons for the ALJ to discount plaintiff's credibilty.  *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered evidence of exaggeration of pain to receive pain medication in credibility assessment).  As plaintiff does not challenge any of the other reasons the ALJ gave for rejecting plaintiff's credibility, plaintiff has failed to demonstrate error by the ALJ in assessing her credibility.

C.       The ALJ Erred in Relying upon the Medical-Vocational Guidelines at Step 5

       1.       *Legal Standard Governing the ALJ's Reliance on the Grids Without a Vocational Expert at Step 5*

As mentioned above, at step five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that plaintiff could perform in light of his age, education, work experience, and residual functional capacity.  *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006) (citing *Tackett v. Apfel,* 180 F.3d 1094, 1098–1099, 1101 (9th Cir. 1999); *Burkhart v. Bowen,* 856 F.2d 1335, 1340 (9th Cir. 1988)).  In *Tackett*, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2 ."  *Id.*  The ALJ in this case did not use a vocational expert and, instead, relied solely on the Medical–Vocational Guidelines ("the grids" or "the guidelines") to perform his step-five evaluation.

The grids present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant.  The grids categorize jobs by their physical-exertional requirements and consist of three separate tables (one for each category):

REPORT AND RECOMMENDATION - 15

1   "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work

2   capacity limited to light work," and "[m]aximum sustained work capacity limited to medium

3   work." 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00. Each grid presents various

4   combinations of factors relevant to a claimant's ability to find work. The factors in the grids

5   are the claimant's age, education, and work experience. For each combination of these factors,

6   the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in

7   the national economy in that category of physical-exertional requirements. *Tackett,* 180 F.3d at

8   1101 (emphasis in original).

9        The ALJ's reliance on the grids at step five is justified if they *"completely and*

10  *accurately* represent a claimant's limitations . . . . In other words, a claimant must be able to

11  perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium

12  work." *Tackett*, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote

13  omitted). If the grids do not match all of the claimant's qualifications, the Commissioner may

14  not use them as a framework to make a determination of what work exists. *See Hoopai v.*

15  *Astrue,* 499 F.3d 1071, 1075 (9th Cir. 2007). Importantly, the grids can still be used if there

16  are both exertional and non-exertional limitations present, as "a vocational expert is required

17  only when there are significant and 'sufficiently severe' non-exertional limitations not

18  accounted for in the grid." *Id.* at 1076 (finding that mild or moderate depression does not

19  establish a "sufficiently severe non-exertional limitation" to preclude reliance on the grids at

20  step five).

21       In other words, the question of whether the ALJ may rely on the grids in a case where a

22  claimant suffers from both exertional and non-exertional impairments depends upon whether

23  the claimant's non-exertional impairments are "significant and sufficiently severe" such that

24  they affect a claimant's ability to perform the full range of jobs at the appropriate strength

REPORT AND RECOMMENDATION - 16

level.  If the occupational base is significantly limited by a non-exertional impairment, the ALJ

may not rely on the grids to carry the burden of proving that there are other jobs a claimant can

do.  Instead, the testimony of a vocational expert is required.

Here, with respect to plaintiff's exertional limitations, the ALJ found plaintiff capable

of "light work" with occasional postural limitations that "do not significantly erode the

universe of light work."  AR at 36.  With respect to plaintiff's non-exertional limitations

resulting from her mental impairments, the ALJ found that plaintiff "is able to perform simple

and some hands-on tasks reliably.  She would work best in a clean and sober environment in a

job that required only limited interactions with the public and . . . with co-workers.  She would

work best in a workplace that has stable hours, clear job expectations, and a steady workpace."

AR at 36.  Following this discussion, however, the ALJ included a footnote indicating that he

has "include[d] these limitations from the DDS assessments, but note that the world is

imperfect and the fact that claimant might 'work best' under some circumstances does not

necessarily eliminate imperfect vocational settings from the realm of her [RFC]."  AR at 36,

n.4 (citing *Valentine v. Comm'r SSA*, 574 F.3d 685, 691 (9th Cir. 2009) ("is less likely to have

difficulty with [such tasks]," does not establish that claimant is incapable of working except

under the recommended conditions).

The ALJ's assessment of plaintiff's nonexertional limitations was consistent with the

opinion of non-examining state agency psychologist Leslie Postovoit, Ph.D.  AR at 620-21.

Specifically, Dr. Postovoit included the following explanation in the narrative portion of her

Mental Residual Functional Capacity Assessment:

> In light of the inconsistencies [in plaintiff's reports to providers] noted, what is
> most consistent stands out in contrast.  Clmt has had problems w/ her back.  They
> do not appear to be as severe as she claims at times.  She has ongoing issues w/
> overusing rx'd meds and w/ cannabis and ETOH.  She is mood-reactive.  She is
> not socially very isolated, has friends, visits bars, and has a new boyfriend.  Dx

adopted in light of all MER are Personality D/O NOS (Borderline and Antisocial features), ETOH Dependence, in partial remission, Cannabis Abuse, and hx of Cocaine Dependence, w/ question of overuse of rx'd benzodiazepines and narcotics.  Clmt seen as consistent re: having problems with temper, but not w/ anxiety.  She does not appear depressed, but often irritated.  She has limited education and job experience.  Per MER, the clmt can:

Work best in a C&S environment w/ limited need for interactions w/ the public and w/ limited interactions w/ co-workers.  A workplace that has stable hours, job expectations, and a steady work pace would be best for this clmt.

AR at 620.

Plaintiff contends that the ALJ erred by "rel[ying] on unspecified Grid Rules for 'light' work as a 'framework' without vocational-expert testimony." Dkt. 11 at 9 (AR at 36, 54-57). Specifically, even "assuming as true the ALJ's [RFC], Myers's combined non-exertional limitations required the ALJ to obtain vocational-expert testimony." *Id.* (citing *Tackett*, 180 F.3d at 1101-04) (discussing when vocational-expert testimony is required); *Byrd v. Astrue*, 2009 WL 1351206, at *8-12 (W.D. Wash. May 13, 2009) (remanding for vocational-expert testimony based on the claimant's combination of non-exertional limitations).  Plaintiff argues that the "ALJ cited no evidence that [plaintiff's] work-related social deficits pertaining to co-workers (or co-workers and the public combined) were not significant non-exertional limitations or that such deficits were co-extensive with unskilled work," or that plaintiff's "work-related limitations pertaining to hours, expectations, and pace were not significant non-exertional limitations or that such deficits were co-extensive with unskilled work."  *Id.* at 11.

Plaintiff further contends that the ALJ erred by relying on SSR 85-15 as a basis to reach his step-five finding of non-disability without vocational-expert testimony, because the Ninth Circuit has held that SSR 85-15 does not apply to a case in which both "exertional and nonexertional" impairments are at issue. *Id.* at 10 (citing *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995)).  *See also Sandgathe v. Chater*, 108 F.3d 978, 980-81 (9th Cir. 1997).  Finally,

plaintiff argues that the ALJ erred by relying on *Hoopai*, because "nothing in *Hoopai* provides that vocational-expert testimony is not required if cumulatively a claimant is restricted to a range of 'light' work with interaction with co-workers and the public, stable hours, clear job expectations, and a steady work pace." Dkt. 11 at 12.

The Commissioner responds that "substantial evidence supports the ALJ's determination that Plaintiff's nonexertional limitations did not significantly limit Plaintiff's range of light work." Dkt. 14 at 7. Specifically, the Commissioners asserts that "[a]ccording to Dr. Postovoid . . . plaintiff's non-exertional limitations related primarily to her ability to deal with other people. This makes sense of the limitations Dr. Postovoid assessed," such as her statement that plaintiff would work best in a clean and sober environment with limited need for interactions with the public or co-workers. *Id.* at 8 (citing AR at 621). The Commissioner points out that the ALJ, in adopting these limitations, relied on SSR 85-15 and "found this limitation did not significantly limit Plaintiff's range of light, unskilled work, because unskilled jobs 'ordinarily involve dealing primarily with objects, rather than with data or people.'" *Id.* (citing AR at 56; SSR 85-15).

With respect to Dr. Postovoit's second assertion that a "workplace that has stable hours, job expectations, and a steady work pace would be best for this [claimant]," AR at 621, the Commissioner argues that this is not a sufficiently severe limitation to significantly limit the range of work available to plaintiff because both Dr. Postovoit and the ALJ simply observed that these factors "would be best." Dkt. 14 at 8 (citing AR at 36, 621). The Commissioner further argues that "the determination that these factors 'would be best' show Dr. Postovoid and the ALJ both understood this limitation was minor, and, as the ALJ noted, 'does not necessarily eliminate imperfect vocational settings from the realm of [plaintiff's RFC].'" *Id.* at 8 (citing AR at 36). In addition, the Commissioner argues that limitations to a "workplace that

REPORT AND RECOMMENDATION - 19

1    has stable hours, job expectations and a steady work pace" did not compromise plaintiff's

2    ability to meet the intellectual and emotional demands of unskilled work on a sustained basis

3    under SSR 85-15.  Thus, the Commissioner argues that the nonexertional limitations identified

4    by Dr. Postovoit and adopted by the ALJ did not significantly limit the range of unskilled light

5    work that plaintiff was capable of performing.  Dkt. 14 at 9.[7]

6              Plaintiff responds that "the Commissioner was significantly unresponsive to

7    [plaintiff's] proof that the ALJ cited no evidence that Myers's work-related social deficits

8    pertaining to co-workers (or co-workers and the public combined) were not significant non-

9    exertional limitations or that such deficits were co-extensive with unskilled work."  Dkt. 15 at

10   5.  Instead, "like the ALJ, the Commissioner improperly relied upon SSR 85-15 . . . [by

11   claiming] that SSR 85-15 was actual evidence about social demands of unskilled work.  That

12   Ruling is not evidence, but rather inapplicable authority."  *Id.*  Similarly, plaintiff asserts that

13   the Commissioner improperly relied upon SSR 85-15 as evidence that plaintiff's work-related

14   deficits pertaining to stable hours, clear job expectations, and a steady pace were not

15   significant non-exertional limitations, or that such deficits were co-extensive with unskilled

16   work.  *Id*. at 6.  Thus, plaintiff argues that her "combined non-exertional limitations as found by

17   the ALJ himself warranted obtaining [VE] testimony at step five."  *Id*. at 7.

18             The Court agrees with the plaintiff that the ALJ failed to meet his burden at step five.

19   Specifically, the ALJ's determination that plaintiff's nonexertional limitations regarding a

20   clean and sober environment, limited interaction with the public, limited interaction with co-

21   workers, and a workplace with stable hours, clear job expectations, and a steady work pace "do

22             [7] The Commissioner also asserts that although this court has previously directed this

23   ALJ to "reconsider" his reliance on SSR 85-15 in similar circumstances, the court also noted
     that the ALJ did not commit reversible error since he did "not point to this ruling as requiring a

24   particular conclusion."  Dkt. 14 at 10 (citing *Byrd v. Astrue*, No. C08-1248-RSL-MAT (W.D.
     Wash. 2009)).

REPORT AND RECOMMENDATION - 20

1  not significantly limit the range of work contemplated by the Medical-Vocational Guidelines"

2  speculates about the base of unskilled work without supporting this assertion with adequate

3  evidence.  AR at 36, 56.  As argued by the plaintiff, the ALJ simply relies upon SSR 85-15 and

4  distinguishable caselaw.  AR at 55-56.

5       The Commissioner essentially asks this Court to ignore these additional nonexertional

6  limitations for purposes of evaluating whether the ALJ erred by relying upon the grids, because

7  the ALJ asserted in a footnote that "the world is imperfect and the fact that claimant might

8  'work best' under some circumstances does not necessarily eliminate imperfect vocational

9  settings from the realm of her [RFC]."  AR at 36.  However, an ALJ cannot side-step his or her

10  obligation to obtain vocational expert testimony by simply noting that any additional

11  nonexertional limitations in the RFC assessment should not necessarily preclude the claimant

12  from performing jobs that do not satisfy those requirements.  As plaintiff points out, an RFC

13  reflects the most a claimant can do, despite their impairments.  *See* SSR 96-8p ("RFC is not the

14  *least* an individual can do despite his or her limitations or restrictions, but the *most*.").  Thus,

15  the Court declines the Commissioner's invitation to ignore the non-exertional limitations in the

16  RFC, which the ALJ adopted directly from Dr. Postovoit's MRFCA.

17       The Court also agrees with plaintiff that the ALJ failed to cite adequate authority to

18  support his conclusion that the combination of nonexertional limitations at issue in this case

19  did not significantly erode the occupational base of unskilled work.  For example, although the

20  ALJ relied heavily upon two decisions from the First and Seventh Circuits, these cases do not

21  involve the same (or even a similar) combination of non-exertional limitations as the plaintiff's

22  limitations.  AR at 55 (citing *Ortiz v. Sec. of Health and Human Services,* 890 F.2d 520, 527–

23  28 (1st Cir. 1989) (holding that although "the question [was] a close one," the claimant's

24  moderate limitations in his ability to maintain attention and concentration, maintain regular

REPORT AND RECOMMENDATION - 21

attendance and punctuality, and complete a normal workday without unreasonable interruptions did not significantly erode the full range of light work); *Zalewski v. Heckler,* 760 F.2d 160, 165 (7th Cir. 1985) (holding that unskilled sedentary work available to those needing minimal interaction with others was properly established by reference to the grids, because "the regulations dealing with sedentary work provide that there are approximately two hundred separate unskilled sedentary occupations in the national economy . . . [and] approximately eighty-five percent of these jobs are in the machine trades and benchwork occupational categories that would not require a high degree of interaction with others.").

The ALJ's reliance on the Ninth Circuit's decisions in *Hoopai v. Astrue* and *Razey v. Heckler* is similarly misplaced. AR at 55.  In *Hoopai*, although the claimant's "mild or moderate depression" was considered "severe" at step two of the sequential evaluation process, the claimant's depression did not result in any significant limitations which would have to be included in the ALJ's RFC finding or presented to the vocational expert. 499 F.3d at 1077.  By contrast, the ALJ in this case found that plaintiff's nonexertional impairments did result in restrictions that should be included in the RFC assessment.  AR at 36.  *See also Razey v. Heckler,* 785 F.2d 1426, 1430 (9th Cir. 1986), *modified,* 794 F.2d 1348 (1986) (holding that the Appeals Council "did not err in determining that the use of [the grids] was appropriate where limitations from claimant's 'generalized anxiety disorder' did not significant affect the range of sedentary work otherwise available.").

With respect to SSR 85-15, the ALJ acknowledged that "SSR 85-15 by its terms applies to solely non-exertional impairments," but observed that some courts have also found it relevant to individuals with exertional impairments as well as severe mental impairments.  AR at 56.  Specifically, SSR 85-15 defines the mental capabilities required for unskilled work, and provides that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with

REPORT AND RECOMMENDATION - 22

1   data or people, and they generally provide substantial vocational opportunity for persons with

2   solely mental impairments who retain the capacity to meet the intellectual and emotional

3   demands of such jobs on a sustained basis . . . . The basic mental demands of competitive,

4   remunerative, unskilled work includes the abilities (on a sustained basis) to understand, carry

5   out, and remember simple instructions; to respond appropriately to supervision, coworkers, and

6   usual work situations, and to deal with changes in a routine work setting."  AR at 56 (citing

7   SSR 85-15).

8        As noted above, the ALJ's RFC assessment in this case included nonexertional

9   limitations regarding plaintiff's ability to interact with the public and co-workers, and her need

10  for stable hours, clear job expectations, and a steady work pace.  AR at 36.  These limitations

11  may directly conflict with the "basic mental demands of competitive, remunerative, unskilled

12  work" in SSR 85-15, which require an ability "to respond appropriately to supervision,

13  coworkers, and usual work settings; and to deal with changes in a routine work setting."  SSR

14  85-15.  In addition, SSR 85-15 provides that failure "to meet any of these basic work-related

15  activities would severely limit the potential occupational base." *Id.*  It is therefore not at all

16  clear that under SSR 85-15, plaintiff maintains an ability to perform "the basic mental demands

17  of competitive, remunerative, unskilled work" despite her non-exertional impairments.

18       Accordingly, the Court finds that the ALJ erred by venturing into the realm of

19  vocational expert testimony by concluding, without adequate support, that plaintiff's non-

20  exertional limitations did not significantly erode the occupational base of unskilled light work.

21  Without more, the Court cannot find that substantial evidence supports the ALJ's conclusion

22  that plaintiff retained the capacity to perform nearly the full range of unskilled light work in

23  any work environment, as described in SSR 85-15.  Because the ALJ's reliance on the grids

24  was improper, this case must be remanded for further fact-finding at step five.  On remand, the

1   ALJ shall solicit the testimony of a vocational expert to determine the type of work, if any, that

2   the plaintiff is capable of performing.

3                                              VIII.    CONCLUSION

4          For the foregoing reasons, the Court recommends that this case be REVERSED and

5   REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

6   instructions.  A proposed order accompanies this Report and Recommendation.

7          DATED this 29th day of May, 2013.

8

9                                                       _James P. Donohue_____

10                                                      JAMES P. DONOHUE
                                                        United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 24